318 Ga. 20
FINAL COPY

S23Y0975. IN THE MATTER OF ASHUTOSH S. JOSHI.

P<small>ER CURIAM</small>.

This is the second time this disciplinary matter has come before the Court. In *In the Matter of Joshi*, 315 Ga. 477 (883 SE2d 369) (2023) ("*Joshi I*"), this Court rejected a special master's recommendation to accept the amended petition for voluntary discipline filed by Ashutosh S. Joshi (State Bar No. 405375), which he submitted after the filing of a formal complaint, see Bar Rule 4-227 (c). In that petition, Joshi sought a six-month suspension from the date he stopped practicing law. This Court rejected Joshi's petition because, despite his admission of violating Rule 4.2 (a) of the Georgia Rules of Professional Conduct ("GRPC"),[1] the more serious alleged violations in the case were not addressed, such that

_____

[1] Rule 4.2 (a) provides that "[a] lawyer who is representing a client in a matter shall not communicate about the subject of the representation with a person the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer or is authorized to do so by law or court order."

the Court could not determine if the proposed six-month suspension was appropriate. See *Joshi I*, 315 Ga. at 483-484. The Court remanded the matter to the special master with direction to address the additional alleged misconduct and what level of sanction, if any, was appropriate. See id. at 484.

The matter is now again before the Court on the special master's report and recommendation that this Court accept Joshi's newly amended petition for the voluntary surrender of his bar license. Although Joshi continues to deny the more serious misconduct and violations of the GRPC alleged in this case, because he admits to violating Rule 4.2 (a) — the maximum sanction for a single violation of which is disbarment — and swore under oath that he would never apply for readmission to the State Bar, the Court accepts the voluntary surrender of his license, which is tantamount to disbarment. See GRPC Rule 1.0 (s) ("A voluntary surrender of license is tantamount to disbarment.").

The factual background, as recounted in *Joshi I*, is as follows.

The formal complaint stated that Joshi, who has

been a member of the Bar since 1996, represented a client accused of murder and other offenses. The case against the client, Kenneth Jackson, who was allegedly the highest-ranking member of a gang in Georgia, involved a shooting in which several women were injured and an infant was killed. A co-conspirator pled guilty and agreed to testify against Jackson. After the co-conspirator, who was represented by attorney Brad Gardner, agreed to cooperate against Jackson, he was moved away from Jackson and their placement at the Georgia Diagnostic and Classification Prison to the Rockdale County Jail. The co-conspirator's location was kept confidential out of concern for his safety.

The formal complaint goes on to allege that, prior to the trial, the Assistant District Attorney filed a witness list showing the co-conspirator as a witness and Gardner as his attorney. She served that list on Joshi by e-mail on August 28, 2017. Later that same day, Joshi traveled to the Diagnostic and Classification Prison and met with Jackson. Joshi then traveled to the Rockdale County Jail. Joshi had never represented the co-conspirator, and he allegedly knew that the co-conspirator was represented by Gardner. Joshi did not attempt to secure Gardner's permission to meet with the co-conspirator.

Upon arriving at the Rockdale County Jail, Joshi approached the visitor registration desk and notified the intake deputy that he was there to meet with the co-conspirator — whom he allegedly identified as his client. The intake deputy reviewed the jail database and noticed that, although it showed prior attorney visits for the co-conspirator, Joshi had never visited him. After clarifying that Joshi was, in fact, there to visit his "client," the intake deputy notified the supervisor for the co-conspirator's housing pod that the co-conspirator had an attorney visitor. But when the intake deputy notified

3

Joshi that there would be a short delay so that the pod could be cleared, Joshi, unlike prior attorney-visitors, requested to have the visit occur in the attorney visitation booth, which permitted confidential conversation. Once the co-conspirator had been moved to the attorney visitation booth, another officer escorted Joshi there.

Very shortly after Joshi entered the booth, the intake deputy heard the co-conspirator pounding on the booth window, asking to be removed because Joshi was not his attorney. After the co-conspirator was removed and Joshi had exited the booth, officers observed that the co-conspirator was extremely agitated and visibly upset, stating that Joshi was Jackson's attorney. After Joshi left the facility, he e-mailed Gardner to inform him of his visit with the co-conspirator, and Gardner told Joshi not to visit the co-conspirator again. Joshi thereafter sent correspondence to the co-conspirator and Gardner reviewing the substance of his meeting with the co-conspirator.

The formal complaint charged Joshi with having violated Rules 4.1 (a) (providing that, in the course of representing a client, a lawyer shall not knowingly make a false statement of material fact or law to a third person) and 8.4 (a) (4) (providing that a lawyer shall not engage in professional conduct involving dishonesty, fraud, deceit or misrepresentation) for having knowingly misrepresented to staff at the Rockdale County Jail that he was the co-conspirator's attorney. The maximum sanction for a single violation of either of those Rules is disbarment. The complaint also charged Joshi with a violation of Rule 4.2 (a) for having met with the co-conspirator while knowing that the co-conspirator was represented, without permission from the co-conspirator's counsel.

4

*Joshi I*, 315 Ga. at 478-479.

*Joshi I* then detailed the procedural background of this disciplinary proceeding, which is summarized as follows. After answering the formal complaint and engaging in discovery, Joshi moved for summary judgment, arguing, in essence, that he did not have actual knowledge that the co-conspirator was represented by Gardner and that he did not misrepresent to jail personnel that he was the co-conspirator's attorney, such that he had not committed any of the charged Rule violations. After holding a hearing, the special master entered an order denying Joshi's motion for summary judgment because there were circumstances in the record from which an inference could be drawn that Joshi knew that the co-conspirator was represented in advance of their meeting and because there was conflicting testimony between Joshi and jail personnel regarding whether he told them that he represented the co-conspirator, leaving genuine issues of material fact.

Joshi then filed a petition for voluntary discipline admitting only a single violation of Rule 4.2 (a) for having sent to the co-

5

conspirator the post-meeting correspondence reviewing the substance of their meeting. Joshi did not address the other Rule violations charged. For this single violation, Joshi sought a three-month suspension, nunc pro tunc to the November 30, 2021 date on which he says he stopped practicing law. The Bar recommended that Joshi's petition be accepted despite the unaddressed alleged Rule violations. The special master entered an order denying Joshi's initial petition because, although the petition admitted conduct sufficient to authorize the imposition of discipline under Rule 4-227 (a) without admitting other Rule violations alleged in the formal complaint, the special master believed that "any discipline less than a six-month suspension would not be appropriate."

Joshi amended his petition, changing only the requested suspension from three months to six months. The Bar again recommended acceptance of the petition, and this time so did the special master. But we rejected Joshi's petition for a six-month suspension because "[t]he violations alleged in the formal complaint [were] substantially more serious than the single, comparatively

6

trivial violation to which Joshi [ ] admitted" in his petition, and "nothing before us [gave] any indication that either the Bar or the special master ha[d] concluded that those more serious violations did not occur." *Joshi I*, 315 Ga. at 482. The Court remanded the matter to the special master with direction that any future attempts to resolve Joshi's disciplinary matter should address the more serious allegations and determine whether that conduct could be proved and whether it was sanctionable. Id. at 484.

On remand, Joshi filed a post-remand petition for voluntary surrender of his license to practice law, in which he continued to deny the allegations of the formal complaint but nonetheless sought to surrender his law license. The State Bar responded by recommending that Joshi's petition be rejected, in part, because there were no assurances in the record that Joshi would not at some point seek to return to the practice of law without addressing the serious allegations pending against him. On April 15, the special master entered an order rejecting Joshi's petition for voluntary surrender of license.

7

Joshi then filed a second post-remand petition for voluntary surrender of license, in which he continued to maintain that he never misrepresented to the intake deputy that he was the co-conspirator's attorney, never knew the co-conspirator was represented when he went to the jail to meet him, and never made any kind of threat toward the co-conspirator (though acknowledging that the co-conspirator could have felt threatened due to Joshi's representation of Jackson); Joshi maintained that the intake deputy was mistaken in assuming he represented the co-conspirator and that the co-conspirator told him he needed to contact Gardner, who was his attorney. Joshi stated that, after confirming that Gardner represented the co-conspirator, he then sent the letter to the co-conspirator. Joshi admitted that his conduct violated Rule 4.2 (a), but he made no mention of the other charged violations. Joshi also represented in his second post-remand petition that he had closed his law practice and does not intend to practice law in the future. He attached a sworn affidavit which, as amended, averred,

I will never apply for readmission to the State Bar of

Georgia, and I understand that the State Bar of Georgia is relying upon this representation as a prerequisite to its consent to my surrender of my license to practice law . . . . I understand the Special Master is relying on my representation that I will never apply for readmission to the State Bar of Georgia, if he decides to accept my Voluntary Surrender of license.

On the same day, the special master issued an Interim Order Regarding Second Petition for Voluntary Surrender of License, explaining that he was reluctant to accept Joshi's second petition for voluntary surrender of license based on the same admission of a violation of Rule 4.2 (a) without resolving the additional alleged misconduct in this case, per this Court's direction in *Joshi I*. The special master also recognized, however, that because Joshi admitted to a disbarrable offense and sought to surrender his license, which is tantamount to disbarment, there was no apparent need for additional fact-finding to calibrate the appropriate level of discipline. Nonetheless, the special master also expressed concerns regarding whether acceptance of Joshi's second petition for voluntary surrender of license without fact-finding regarding the alleged Rule violations could work in Joshi's favor if he ever sought

readmission to the Bar and whether such acceptance would fulfill the purposes of the disciplinary system. The special master therefore ordered the Bar to file a response to Joshi's second petition, addressing the special master's concerns. The special master also invited Joshi to submit an optional brief in support of his second petition — an invitation that Joshi declined.

The Bar recommended acceptance of the second petition for voluntary surrender of license because Joshi's admission of conduct in violation of Rule 4.2 (a), which carries a maximum sanction of disbarment, was sufficient to authorize the imposition of discipline. The Bar indicated that it was satisfied with Joshi's sworn averment that he would never seek readmission to the Georgia Bar and that it believed the public would be protected by this resolution.

The special master then issued his report recommending the acceptance of Joshi's second petition for voluntary surrender of license. The special master found that Joshi met with the co-conspirator in jail and later acknowledged that the co-conspirator might have felt threatened by any contact from Jackson's attorney,

but the special master made no findings in regard to the formal complaint's allegations that Joshi violated Rules 4.1 (a) and 8.4 (a) (4) by knowingly misrepresenting to jail personnel that he was the co-conspirator's attorney or that Joshi violated Rule 4.2 (a) by knowing that the co-conspirator was represented at the time he met with him at the jail without permission. The special master did find, however, that when Joshi sent the follow-up letter to the co-conspirator, Joshi knew that the co-conspirator was represented, did not have Gardner's permission to send the letter, and knew it was an improper communication.

The special master acknowledged that Joshi's admitted violation of Rule 4.2 (a) was the same admission he made in his earlier petition for a six-month suspension, which was rejected by this Court in *Joshi I* with direction that any future attempts to resolve Joshi's disciplinary matter should address the additional allegations of misconduct to determine the appropriate level of sanction. But the special master concluded that acceptance of Joshi's post-remand petition for voluntary surrender was "consistent" with

*Joshi I* because, although there were unresolved allegations, "the proper interpretation of the Court's direction is that these matters must be addressed only if necessary to ensure that Joshi's discipline is not too lenient."

The special master stated that his conclusion was based on his interpretation of *In the Matter of Hine*, 314 Ga. 70 (875 SE2d 716) (2022), *In the Matter of Van Dyke*, 311 Ga. 199 (857 SE2d 194) (2021), and *In the Matter of Rigdon*, 307 Ga. 676 (837 SE2d 759) (2020), in which this Court had rejected petitions for voluntary suspension because they did not address fully matters that might warrant additional discipline. The special master concluded that, because Joshi's voluntary surrender of his license would be tantamount to disbarment, "unlike in *Hine*, *Van Dyke*, and *Rigdon*, there is no reason to fear that the discipline might be too lenient if the serious misconduct alleged in the Formal Complaint and the alleged threats to [the co-conspirator] are not addressed."

The special master further opined that "[t]he dearth of precedent for rejecting a petition for voluntary surrender also

supports the conclusion that acceptance of the Second Petition for Voluntary Surrender is consistent with" *Joshi I*. The special master also concluded that acceptance of Joshi's post-remand petition for voluntary surrender would fulfill the purposes of the disciplinary system to protect the public from unethical attorneys and to protect the public's confidence in the legal system.

Under the unique facts and circumstances of this case, we agree with the special master's recommendation and accept Joshi's post-remand petition for voluntary surrender of license. See *In the Matter of Hine*, 314 Ga. 819, 819-822 (879 SE2d 464) (2022) (accepting voluntary surrender of license after earlier petition for voluntary suspension of six months was rejected); *In the Matter of Temple*, 300 Ga. 484 (796 SE2d 250) (2017) (accepting voluntary surrender of license after earlier petitions for voluntary suspensions of one year and four years were rejected); *In the Matter of Gaines*, 300 Ga. 483 (796 SE2d 251) (2017) (accepting voluntary surrender of license after earlier petition for voluntary suspension of three years was rejected). Indeed, this Court generally accepts petitions

for voluntary surrender of license absent some exceptional circumstances, including but not limited to the failure to provide for restitution, see, e.g., *In the Matter of Thomas*, Case No. S07Y1134 (June 4, 2007) (unpublished), which is not an issue here.

Although Joshi has not admitted to the more serious misconduct alleged in this case, his petition's admissions of facts and conduct in violation of Rule 4.2 (a) are sufficient to authorize the imposition of discipline up to disbarment. See Bar Rule 4-227 (a). And although this resolution leaves unaddressed the additional misconduct allegedly committed by Joshi, it remains true that even if that alleged misconduct were addressed and Joshi were found to have committed additional Rules violations, the maximum sanction that could be imposed for such — disbarment — would be no greater than the surrender of Joshi's law license already presented to the Court here. See Rule 1.0 (s).

In accepting Joshi's petition for voluntary surrender of license, we emphasize that Joshi has sworn under oath that he would "never apply for readmission to the State Bar of Georgia," and we are

14

accepting the voluntary surrender of license upon that condition. Although the more serious allegations of misconduct have not been resolved, under these circumstances, there is no reason to further delay these proceedings. Accordingly, it is ordered that the name of Ashutosh S. Joshi be removed from the rolls of persons authorized to practice law in the State of Georgia. Although Joshi represents under oath that he has closed his practice, he nevertheless is reminded of his duties pursuant to Bar Rule 4-219 (b).

*Voluntary surrender of license accepted. All the Justices concur, except LaGrua, J., disqualified.*

Decided December 19, 2023.

Voluntary surrender of license.

*Paula J. Frederick, General Counsel State Bar, William D. NeSmith III, Deputy General Counsel State Bar, Jenny K. Mittelman, Wolanda R. Shelton, Assistant General Counsel State Bar*, for State Bar of Georgia.

*Chandler Law, Douglas V. Chandler*, for Joshi.